UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KYLE GARRETT SOTO,<br><br>Defendant. | 5:18-CR-50050-01-KES<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO PRECLUDE INTRODUCTION OF EVIDENCE OF OTHER CHILD EXPLOITATION |

Defendant, Kyle Garrett Soto, is scheduled for trial on April 12, 2021, on 15 counts involving sexual exploitation of a minor, attempted sexual exploitation of a minor, enticement of a minor using the internet, attempted enticement of a minor using the internet, receipt of child pornography, and possession of child pornography. Dockets 144, 152. The United States provided notice that it intends to introduce evidence at trial of other sexual exploitation. Dockets 85, 145. Soto moves in limine to preclude the United States's introduction of sexual exploitation other than that for which Soto is charged. Docket 136. For the following reasons, the court grants in part and denies in part Soto's motion.

## BACKGROUND

### I. Charged Conduct

The Fourth Superseding Indictment charges Soto with five counts of sexual exploitation of a minor, one count of attempted sexual exploitation of a minor, five counts of enticement of a minor using the internet, one count of

attempted enticement of a minor using the internet, two counts of receipt of child pornography, and one count of possession of child pornography. The counts charge conduct relating to six minor victims. Docket 148 at 2; *see* Docket 152.

Counts 1 and 3 charge conduct pertaining to victim W.S. Docket 152 at 1-2; Docket 148 at 2. The United States alleges that Soto offered to pay W.S. in gift cards in exchange for W.S., a minor, producing and sending Soto images of child pornography. Docket 148 at 3. Soto allegedly threatened that if W.S. did not send additional images and videos of child pornography, Soto would share with others the images of child pornography that W.S. had already sent to him. *Id.* W.S. and Soto had previously video chatted using a website called Fruzo. *Id.* During the Fruzo chat, W.S. displayed his genitals and masturbated and Soto took screenshots. *Id.* The United States does not state from what email account Soto was allegedly communicating with W.S. *See id.*

Counts 2 and 4 involve alleged conversations between Soto and an undercover law enforcement agent posing as W.S. Docket 152 at 2-3; Docket 148 at 3-4. During those conversations, Soto allegedly posed as a young girl and told the agent that he saved a video of W.S. from their Fruzo communications, and that he would pay a $200 Amazon gift card in exchange for another video of child pornography. Docket 148 at 3-4. When the agent hesitated, Soto allegedly told the victim that he would post the Fruzo video on the internet and tell W.S.'s mother about it. *Id.* at 4. He stated that if W.S. "ma[de] a deal" with Soto, he would not show W.S.'s mother the video. *Id.*

Counts 5 and 6 involve alleged communications between Shane118@gmail.com, allegedly Soto, and victim K.A., a 15-year-old female. Docket 152 at 3-4; Docket 148 at 4-5. Soto allegedly threatened that if K.A. did not produce and send more and more images of child pornography of herself, he would release previously sent images of K.A. to her friends and family. Docket 148 at 4.

Counts 7 and 8 involve communications between Shane118@gmail.com, allegedly Soto, and two minor females, N.W. and A.C. Docket 152 at 4-5; Docket 148 at 6-7. During those communications, Soto allegedly demanded that N.W. and A.C. produce videos of child pornography to unlock or unblock the gift cards he previously provided to them. Docket 148 at 6. He threatened that he would post the videos online or send the videos to their families if they did not comply with his demands for more videos. *Id.* He demanded that they "make a deal" with him for more videos. *Id.* He also demanded that they involve one of the girls' 7-year-old brothers in the explicit videos, which they refused to do. *Id.* at 7.

Counts 9 and 10 involve alleged communications between Shane118@gmail.com, allegedly Soto, and A.R. Docket 152 at 5; Docket 148 at 5-6. During those communications, Soto referred to himself as "Lish1586," and A.R. sent Soto an image of herself with "Lish1586" written across her bare chest. Docket 148 at 5. Soto offered A.R. a gift card "account" in exchange for more images. *Id.* He also threatened to post online the pictures that A.R. had previously sent if she did not continue complying with his demands. *Id.* If they

did not "make a deal," he threatened that she would go to jail for prostitution. *Id.*

Counts 11 and 12 involve correspondence between Shane118@gmail.com, allegedly Soto, and an unidentified female victim referred to as "Star Pants." Docket 152 at 6; Docket 148 at 7-8. The United States does not state whether Soto extorted images from Star Pants by threatening to publish past photographs, promising gift cards, or imploring her to "make a deal." *See* Docket 148 at 7-8.

## II. Uncharged Conduct: Skype Conversations

The United States alleges that Soto used tactics similar to those he used to communicate with the charged victims to communicate with five uncharged victims via Skype and seeks to introduce during trial evidence of those Skype conversations. Docket 148 at 8-10. Each communication involves conversations between Skype user "soccerboy2014," which the United States alleges was Soto, and a female Skype user. *Id.* Soccerboy2014 extorted nude images from each user by threatening to expose prior pornographic images that the user had sent to Soccerboy2014 if the user did not comply with Soccerboy2014's demands. *Id.* Soccerboy2014 also demanded that each individual expose her anus, among other body parts. *Id.* The United States does not allege that anything about these uncharged Skype communications inherently ties Soto to the Soccerboy2014 account. *See id.*

4

### III. Uncharged Conduct: Email Conversations and Attachments

#### A. Communications with Adriana Toy

The United States seeks to introduce conversations between Shane118@gmail.com and toy65366@gmail.com, Adriana Toy. Docket 148 at 11-12. Shane118@gmail.com gave Toy login information to his account for Summoners War, an online interactive game where the United States alleges Soto met many of his victims. *Id.* at 12. Forensic examination showed Summoners War artifacts on Soto's cell phone when he was arrested. *Id.* Shane118@gmail.com asked Toy to add him as a friend on Summoners War and stated that his account was AriaRose2015. *Id.* Soto's daughter, who was born in 2015, is named Aria Rose. *Id.*

Shane118@gmail.com also asked Toy to record a video thanking "Lish1586" for the Summoners War account information. *Id.* According to the United States, the name "Lish1586" is commonly used in Soto's communications, and Soto admitted in an interview with law enforcement that lish1586@gmail.com was his active email address. *Id.* at 13. The United States argues that the "1586" in "Lish1586" refers to the day and year of Soto's birthday, September 15, 1986. *Id.* The United States also argues that "lish" is short for "Sotolishcious," a nickname Soto allegedly used for himself. *Id.* at 13.

Shane118@gmail.com asked Toy to wear "less clothes" while recording the video and asked Toy to expose her anus. *Id.* at 12. When Toy refused to comply with those demands, Shane118@gmail.com threatened to post on the internet images Toy had sent previously. *Id.* Shane118@gmail.com sent a

5

screenshot of Toy's friends from a social media site and stated that if she did not "make a deal" with him to send more images, he would post the images she already sent on social media. *Id.* at 13. There are no images of child pornography contained in the exchange between Shane118@gmail.com and Toy. *Id.* at 12.

### B. Communications with Elise Thornton

The United States seeks to introduce communications between Shane118@gmail.com and elisethornton224@gmail.com, Elise Thornton. *Id.* at 13-14. In those conversations, Shane118@gmail.com told Thornton he would post photographs of her on the internet unless she wanted to "work this out." *Id.* at 13. Shane118@gmail.com sent Thornton an invalid gift card code and promised her gift cards in exchange for nude photographs. *Id.* at 14. According to the United States, Soto used the promise of gift cards to convince others, including W.S., K.A., N.W., and, A.C., to send nude photographs. *Id.* Shane118@gmail.com also offered to send photographs of his genitals to Thornton. *Id.*

The United States seeks to introduce four photographs attached to the emails between Shane118@gmail.com and elisethornton224@gmail.com. First, a photograph of a teenage girl holding a sign with Aria Rose 2105 written on it. Second, the same girl holding up two fingers. Third, the same girl with a second girl of a similar age. And fourth, a screenshot of the invalid gift card that Shane118@gmail.com sent to Thornton. *Id.*

### C. Communications with drew.holjes@hotmail.com

The United States seeks to introduce email communications between Shane118@gmail.com and drew.holjes@hotmail.com in which Shane118@gmail.com stated that he had taken a video of drew.holjes@hotmail.com showing his anus earlier in the day while they chatted on Omegle, a video chat website. *Id.* at 14. Shane118@gmail.com stated that if drew.hojles@hotmail.com wanted to "make a deal," he would delete the video. *Id.* The United States intends to introduce evidence of a draft email to drew.holjes@hotmail.com in an email account that was logged into Soto's cell phone at the time of his arrest, Kyle1586ck@yahoo.com. *Id.* Soto's ex-wife confirmed that Soto used the Kyle1586ck@yahoo.com address regularly. *Id.*

### D. Correspondence with sam-milange@web.de

The communications between Shane118@gmail.com and sam-milange@web.de involve Shane118@gmail.com asking for photographs of specific body parts of sam-milange@web.de, including her anus. *Id.* at 15. There are numerous pornographic photographs and videos in the email communications and the subject appears to be a teenager. *Id.* The United States does not allege that Shane118@gmail.com extorted photographs from sam-milange@web.de using threats or promises of gift cards. *See id.* at 15-16.

### E. Correspondence with strong1girl@gmail.com

The United States seeks to offer communications between Shane118@gmail.com and strong1girl@gmail.com. *Id.* at 16.

7

Shane118@gmail.com offered strong1girl@gmail.com gift cards in exchange for nude images and stated that he would reveal past images if she failed to comply with his demands for more. *Id.* Shane118@gmail.com asked strong1girl@gmail.com to engage in sexual acts with her 15-year-old brother. *Id.* The United States asserts that asking victims to involve others in producing obscene images was a "theme" in Soto's communications. *Id.*

### F. Correspondence with devilsdonkey@gmail.com

In communications between Shane118@gmail.com and devilsdonkey@gmail.com, devilsdonkey@gmail.com stated that she was under 18 and that Shane118@gmail.com was "attempting to extort child pornography images from her." *Id.* at 17. Shane118@gmail.com stated that he was going to post her photos on a pornography website. *Id.* Attached to these emails is a non-illicit photograph of devilsdonkey@gmail.com holding up three fingers. *Id.* The same photograph was found on Soto's cell phone when he was arrested. *Id.* In the images, devilsdonkey@gmail.com is wearing underwear.

### G. Testimony of Soto's ex-wife

The United States seeks to offer evidence from Soto's ex-wife that he commonly demanded nude images from her, specifically photographs of her anus. *Id.* The United States does not allege that the demands were made via the Shane118@gmail.com email account.

## DISCUSSION

Generally, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in

8

accordance with the character or trait." Fed. R. Evid. 404(a). "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence of prior crimes or wrongs may be admissible, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Rule 404(b) evidence must be "relevant to a material issue, established by a preponderance of the evidence, more probative than prejudicial, and similar in kind and close in time" to the charged conduct. *United States v. LeCompte*, 99 F.3d 274, 277 (8th Cir. 1996) (quoting *United States v. Baker*, 82 F.3d 273, 276 (8th Cir. 1996)).

**I.      Intent**

Evidence of prior acts may be admissible to prove motive or intent. Fed. R. Evid. 404(b)(2). The United States argues that alleged past crimes that are similar to those charged in the indictment should be admitted to show Soto's intent to commit the charged crimes. Docket 101 at 13-14. But Soto concedes that "intent cannot be a serious issue in this case." Docket 137 at 4. There is no real issue of whether the person who engaged in the charged behavior intended to engage in child exploitation or if he or she could have an innocent explanation for the acts. Thus, evidence of past exploitation by Soto introduced to prove intent has low probative value. Further, it is needlessly cumulative and is likely to lead to impermissible inferences based on Soto's character. If the jury accepts that Soto exploited the six individuals named in the

9

indictment, evidence that he exploited numerous other individuals adds nothing except the possibility to infer that he has a propensity to exploit children on the internet. Such evidence is more prejudicial than probative and not admissible to prove Soto's intent.

## II.   Identity

### A.   Evidence directly tying Soto to the online accounts

Evidence of prior crimes or wrongs may be admissible to prove identity. Fed. R. Evid. 404(b)(2). Rule 404(b) evidence must be "relevant to a material issue, established by a preponderance of the evidence, more probative than prejudicial, and similar in kind and close in time" to the charged conduct. *LeCompte*, 99 F.3d at 277 (quoting *Baker*, 82 F.3d at 276). The identity of the owner of the Shane118@gmail.com email and the Soccerboy2014 Skype account is a contested issue. *See* Docket 150 at 2-3. Thus, evidence tying Soto to either account is relevant to the material issue of the identity of the charged defendant.

Here, some of the past evidence that the United States seeks to introduce does tie Soto to the Shane118@gmail.com email account. Summoners War artifacts were found on Soto's cell phone, the AriaRose2015 username appears to be a reference to Soto's daughter, and the Shane118@gmail.com's references to "Lish1586" are tied to Soto. Docket 148 at 12-13. Thus, the portions of the conversations with Toy referencing Summoners War, AriaRose2015, and Lish1586 tend to show that the user of the Shane118@gmail.com account was

10

Soto, as does the photo of Toy with a sign saying Lish1586. The photograph attached in the conversations with Thornton that portray a girl with a sign that says Aria Rose 2015 also ties Soto to the images. Finally, the draft email to drew.holjes@hotmail.com in an account tied to Soto by his wife's testimony and the search of his phone, combined with the threatening emails to drew.holjes@hotmail.com from Shane118@gmail.com, tend to show that the user of Shane118@gmail.com is the same person as the user of Soto's personal email. The photographs attached to communications with devilsdonkey@gmail.com and Toy were found on Soto's phone when it was searched. Thus, each of these communications is highly probative of whether Soto is the person who used the Shane118@gmail.com address.

      The other elements of those conversations, however, including threats to Toy and Thornton and other vulgar statements, are less probative of Soto's identity and are likely to cause unfair prejudice to Soto by exposing the jury to cumulative evidence of Soto's alleged bad acts. The potential for prejudice outweighs the probative value of any communications between Shane118@gmail.com and others that do not contain information tying Soto to the Shane118@gmail.com account, particularly communications where Shane118@gmail.com solicits nude photographs, speaks aggressively and vulgarly to others, or sends images of his genitals. Thus, only the portions of

those conversations that tend to directly show that Soto was the user of the Shane118@gmail.com email address may be introduced to prove identity.[1]

Nothing in the sam-milange@web.de correspondence, strong1girl@gmail.com correspondence, Soto's ex-wife's testimony about Soto's demands for photographs, or any of the uncharged Skype conversations ties the Shane118@gmail.com or soccerboy2014 account to Soto. Those conversations are not probative on the issue of Soto's identity as Shane118@gmail.com and soccerboy2014 and are highly likely to cause unfair prejudice by introducing cumulative instances of exploitation. Thus, those conversations are not admissible under Rule 404(b) to prove Soto's identity as the perpetrator of the charged crimes.

### B. Modus Operandi Evidence

Evidence of past acts may be admitted to prove that the defendant committed the charged crimes in cases where the "pattern and characteristics of the crimes [are] so unusual and distinctive as to be like a signature[.]" *United States v. Carroll*, 207 F.3d 465, 468 (8th Cir. 2000) (alteration in the original) (citation omitted). A "much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind." *LeCompte,* 99 F.3d at 278 (quoting *United States v. Myers,* 550 F.2d 1036, 1045 (5th Cir. 1977)). When the "conduct underlying [a defendant's past

---

[1] Certain other portions may be admissible as modus operandi evidence to show identity. *See infra* § II.B.

12

bad acts] and his current charged offense both involve[] a unique set of 'signature facts,' then his prior conviction [is] admissible to show that the same person committed both crimes." *Carroll*, 207 F.3d at 468. But in cases where the evidence is not "sufficiently idiosyncratic," the past bad acts are "nothing more than the character evidence that Rule 404(b) prohibits." *Id.* (quoting *United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996)). For a signature modus operandi use to apply, "other crimes by the accused [must be] so nearly identical in method as to earmark them as the handiwork of the accused." *LeCompte*, 99 F.3d at 278 (quoting *United States v. Drew*, 894 F.2d 965, 970 (8th Cir. 1990)).

The United States asserts that Soto's modus operandi involved demanding specific images of his victims' bodies, including victims' breasts, anuses, and vaginas, and that he asked for photographs of each victim's anus. Docket 148 at 15-17. The United States also alludes to various other "themes" in Soto's alleged conduct, including asking victims to include others in the production of pornography, telling victims he was masturbating and that he was near ejaculation, asking victims to hold up two or three fingers in photographs, bribing victims with gift cards, and using the phrase "make a deal" when demanding more images. *Id.* at 5, 9, 14, 16.

The United States does not show that all of these actions together constitute a modus operandi that was "nearly identical" among Soto's alleged crimes and the charged crimes. *LeCompte*, 99 F.3d at 278 (quoting *Drew*, 894 F.2d at 970). In each of the five Skype conversations with uncharged victims,

13

Soto allegedly extorted nude images via threats to expose photographs or promises of gift cards, demanded that the victims show their anuses, and told the victims that he was masturbating and was close to ejaculation. Docket 148 at 9-10. Several of the uncharged email conversations exhibited those same elements. *See* Docket 148 at 12-17. But while those conversations are similar to one another, they are not "so nearly identical in method as to earmark [the charged crimes] as the handiwork of the accused." *LeCompte*, 99 F.3d at 278 (quoting *Drew*, 894 F.2d at 970). For example, the United States does not allege that Soto promised gift cards to K.A. in exchange for photographs. Docket 148 at 4-5. The United States also does not allege that Soto warned W.S., K.A., A.R., or Star Pants that Soto was near ejaculation to coerce them to send more images.

Further, while each victim was coerced or threatened into sending photographs, and Soto allegedly asked each to send photographs of their anuses, these two behaviors alone do not show a unique method that tends to establish identity. The United States fails to show that these traits do not simply "reflect misconduct common to all too many child sex offenders," especially offenders who extort child pornography from children over the internet. *LeCompte*, 99 F.3d at 279. The United States does not allege that Soto only requested photographs of his victims' anuses or that he did so using peculiar or consistent language. In fact, he allegedly asked several charged and uncharged victims for photographs of their anuses, genitals, and breasts. While used consistently, Soto's alleged requests for photographs of his victims'

14

anuses and his use of coercion or threats to obtain the images are not sufficiently specific to constitute the unusual and distinctive evidence required to show modus operandi.

The use of the phrase "let's make a deal" and repeated requests for victims to hold up two or three fingers, however, are "so unusual and distinctive as to be like a signature[.]" *Carroll*, 207 F.3d at 468 (citation omitted). Soto allegedly used the exact phrase "make a deal" to extort images from uncharged victims Toy and drew.holjes@hotmail.com and from charged victims W.S., A.R., and N.W. and A.C. Docket 148 at 4-6, 13, 14. Charged victim A.R. and uncharged victims Thornton and devilsdonkey@gmail.com all allegedly sent images of themselves holding up two or three fingers to Soto. Docket 148 at 5, 14, 17, 19. Both behaviors are specific, unusual, and distinctive. Thus, when those tactics occur in a communication where evidence ties Soto to the Shane118@gmail.com email, evidence of that distinctive conduct is highly probative as it tends to show that Soto was also the user of the account when the communication with charged victims occurred. Evidence from the drew.holjes@hotmail.com, Toy, Thorton, and devilsdonkey@gmail.com accounts of the offer to "make a deal" and of the victims holding up one or two fingers is admissible as modus operandi evidence to show that Soto was the user of the account both during those uncharged communications and the charged communications.

**CONCLUSION**

Under Rule 404(b), evidence of past conduct is admissible where the evidence ties Soto to the Shane118@gmail.com email address, or when it exhibits a modus operandi and is tied to the Shane118@gmail.com address. Thus, Soto's motion to exclude evidence is **denied** as to the following communications, and the court finds the following communications are admissible under Rule 404(b):

1. Evidence of Shane118@gmail.com and toy65366@gmail.com discussing the Summoners War accounts lish1586 and AriaRose2015.

2. Evidence of Shane118@gmail.com asking toy65366@gmail.com to "make a deal."

3. Image attachment from conversations between Shane118@gmail.com and toy35633@gmail.com with young female holding a sign that says "Lish1586."

4. Email attachment in communication from Elise Thornton to Shane118@gmail.com with a teenage girl holding a sign saying Aria Rose 2105.

5. Email attachment in communication from Elise Thornton with image of the same girl holding up two fingers.

6. Communications between Shane118@gmail.com and drew.holjes@hotmail.com offering to "make a deal."

    7.       The email attachment from the devilsdonkey@gmail.com correspondence showing a female holding up three fingers that was found on Soto's phone.

Soto's motion to exclude is **granted** as to the following:

1. Any of the uncharged Skype conversations involving soccerboy2014.
2. Any other vulgar threats and demands to toy65366@gmail.com that she wear less clothes or send more pictures not related to the offer to "make a deal".
3. Email communications between the defendant and elisethornton224@gmail.com, aside from the attachments referenced above.
4. Any communications or attachments with sam-milange@web.de.
5. Any communications or attachments with strong1girl@gmail.com.
6. Any communications or attachments with devilsdonkey@gmail.com, aside from the photograph attachment that was found on Soto's phone.
7. Any communications between Soto and his ex-wife involving Soto's demands that she take photographs of portions of her body.

The court reserves ruling on the admissibility of the "non-404(b)" evidence contained in the United States's amended notice. Docket 148 at 17-20. The 404(b) analysis framework does not apply to that evidence and thus it is not included in a ruling on the motion to exclude prior instances of

exploitation. If Soto seeks a ruling pre-trial on the non-404(b) evidence, he should make a separate motion and brief the issue.

Dated March 15, 2021.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE