UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KYLE GARRETT SOTO,<br><br>Defendant. | 5:18-CR-50050-01-KES<br><br><br>ORDER DENYING MOTION TO<br>DISMISS |

Defendant, Kyle Garrett Soto, filed a pro se motion to dismiss the Fourth Superseding Indictment in this case on the grounds that his constitutional and statutory speedy trial rights have been violated. Docket 156. The government opposes the motion. Docket 162. For the following reasons, the court denies the motion.

**FACTUAL BACKGROUND**

On April 24, 2018, the United States filed a criminal complaint accusing Soto of enticement of a minor using the internet in violation of 18 U.S.C. § 2422(b). Docket 1. Magistrate Judge Daneta Wollmann issued a warrant for his arrest and he was arrested on April 24, 2018. Docket 3. Soto had an initial appearance in front of Magistrate Judge Wollmann on April 25, 2018, and Magistrate Judge Wollmann appointed the Federal Public Defender to represent him. Dockets 6, 8. Jennifer Albertson, an Assistant Federal Public Defender, noted her appearance on behalf of Soto. Docket 12. After the initial

appearance, Magistrate Judge Wollmann entered an order detaining Soto in the custody of the Marshals Service pending his preliminary hearing, which was scheduled for May 9, 2018. Docket 9. Judge Jeffrey Viken entered a scheduling order that set Soto's trial for July 3, 2018. Docket 10. On May 9, 2018, Magistrate Judge Wollmann ordered Soto detained pending trial. Docket 27. An Indictment was filed on May 8, 2018, charging Soto with six counts of sexual exploitation of a minor, attempted sexual exploitation of a minor, enticement of a minor using the internet, attempted enticement of a minor using the internet, receipt of child pornography, and possession of child pornography. Docket 21.

On June 6, 2018, Soto, through Albertson, filed a first motion for 30-day continuance, stating that "[t]he parties [were] engaged in plea negotiations and anticipate[d] that a plea agreement will be filed in this matter." Docket 28 at 1. Judge Viken granted the continuance on June 12, 2018. Docket 30. On July 6, 2018, Soto, through Albertson, filed a second motion to continue the trial by 60 days. Docket 31. That motion stated that Albertson required additional time to consult with experts and review and receive additional discovery from the United States, and that additional time was necessary for plea negotiations. *Id.* at 1. Judge Viken granted that continuance on July 17, 2018. Docket 32. Albertson filed a third motion to continue, requesting a 60-day continuance, on August 31, 2018, again citing a need to investigate discovery and to continue plea negotiations. Docket 34 at 1. Judge Viken granted the motion on September 6, 2018. Docket 35. On November 2, 2018, Soto, through Albertson, filed a fourth motion to continue, requesting 30 additional days and stating

2

that Soto had not received proposed plea documents from the government. Docket 36 at 1. Judge Viken granted the continuance on November 5, 2018. Docket 38. Soto, through Albertson, filed a fifth motion to continue the trial by 30 days on November 21, 2018, stating that additional time was needed to review plea documents with Soto. Docket 39 at 1. Judge Viken granted the continuance on November 29, 2018. Docket 41.

Albertson filed a sixth motion to continue on January 3, 2019, this time stating that Soto had decided to proceed to trial and that through informal discussions with the court, a trial date had been set for May 28, 2019. Docket 42 at 1. Judge Viken granted the continuance and set a jury trial in the case for May 28, 2019. Docket 43. On January 11, 2019, Soto retained as counsel Ellery Grey, and Albertson withdrew as his counsel. Dockets 46, 47, 48.

On February 20, 2019, the United States filed a Superseding Indictment that charged Soto with 18 counts of sexual exploitation of a minor, attempted sexual exploitation of a minor, enticement of a minor using the internet, attempted enticement of a minor using the internet, receipt of child pornography, and possession of child pornography, adding several victims to those charged in the original indictment. Docket 49. On April 16, 2019, Soto, through Grey, filed a seventh motion to continue the trial by 60 days, stating that Grey needed additional time to review discovery and prepare for trial. Docket 52 at 1. Judge Viken granted the motion on April 18, 2019. Docket 55.

The United States filed a Second Superseding Indictment on April 16, 2019, charging Soto with 21 counts of the same crimes alleged in the

3

Superseding Indictment. Docket 53. Soto moved to continue for the eighth time on May 10, 2019, requesting the trial be moved from July 23, 2019 to some time between December 2 and 10, 2019 to allow Grey additional time to review discovery and prepare for trial. Docket 57 at 1. Judge Viken granted the motion on May 23, 2019 and set a trial date for December 2, 2019. Docket 60.

On October 22, 2019, the United States filed a Third Superseding Indictment that charged Soto with fifteen counts of the same crimes charged in the original and Second Superseding Indictments. Docket 68. Soto, through Grey, filed a ninth motion to continue on November 8, 2019. Docket 74. The motion stated that the charges in the Third Superseding Indictment were based on images and electronic data that required analysis by a computer forensic expert and were voluminous and complex. *Id.* at 1. Soto, through Grey, also filed a motion to dismiss the indictment due to a violation of Soto's constitutional and statutory rights to a speedy trial. Docket 76. The United States opposed the ninth motion to continue and the motion to dismiss. Dockets 77, 78. Judge Viken denied the motion for continuance and the motion to dismiss.[1] Dockets 79, 99. Judge Viken continued the trial to December 9, 2019 and appointed Paul Andrews as Soto's attorney, because Soto moved for a new attorney noting he was dissatisfied with Grey's representation. Dockets 98, 102.

---

[1] The court incorporates the opinion of Judge Viken denying Soto's first motion to dismiss. Docket 99. Many of the arguments Soto raises are present in both motions and to the extent that they are based on the same facts, the court adopts the findings in the opinion denying the first motion to dismiss.

4

Soto, through Andrews, moved for a 90-day continuance on December 18, 2019, to allow Andrews time to review discovery and consult with Soto. Docket 104 at 1. Judge Viken granted the continuance on December 12, 2019 and set a trial date of March 3, 2020. Docket 107. Soto, through Andrews, filed a motion to continue the trial and asked for a trial date between June 8 and June 16, 2020, to give Andrews additional time to prepare for trial. Docket 115 at 1. Judge Viken granted the motion and set a trial date of June 8, 2020. Docket 116.

On March 6, 2020, the case was reassigned to Judge Karen Schreier. Docket 118. On April 8, 2020, the Chief Judge of the District of South Dakota amended Standing Order 20-03 to continue all jury trials that were scheduled to commence on or before July 6, 2020, because of COVID-19. First Amended Standing Order 20-03 (D.S.D. Apr. 8, 2020). Soto, through Andrews, moved to continue the trial scheduled for June 8, 2020, on the grounds that the trial date of June 8, 2020, was included in the time period covered by the standing order. Docket 122 at 1. After a status conference between the parties on June 1, 2020, this court granted the motion for continuance and set a trial date of October 26, 2020. Dockets 123, 124.

On October 16, 2020, Soto, through Andrews, filed a motion to continue the trial because of COVID-19 cases continuing "to rise at an alarming rate throughout the District of South Dakota and in Pennington County in particular." Docket 132 at 1. There were 797 new cases reported in South Dakota on October 15th, including 86 cases in Pennington County. *Id.* at 1 n.1.

5

According to Andrews, Soto was held in a cell block where at least one visibly sick inmate had been held, and Soto was potentially exposed to that inmate. *Id.* at 1-2. Andrews asserted that he would be required to meet with Soto in a small room to prepare for trial, risking his exposure to COVID-19. *Id.* at 2. The court granted the continuance and set a trial date of April 12, 2021 based on the parties' and witnesses' availabilities. Docket 144. The case is currently scheduled for trial on April 12, 2021. As of March 29, 2021, Soto has been in custody for 1,070 days.

## DISCUSSION

The court independently analyzes Soto's right to a speedy trial under the Speedy Trial Act and the Sixth Amendment to the Constitution. *See United States v. Johnson*, --- F.3d ---, 2021 WL 865341, at *4 (8th Cir. Mar. 9, 2021) (quoting *United States v. Williams*, 557 F.3d 943, 948 (8th Cir. 2009)).

## I.   STATUTORY SPEEDY TRIAL RIGHTS

Under the Speedy Trial Act, a trial must "begin within 70 days of the filing of an information or indictment or the defendant's initial appearance . . . ." *Zedner v. United States*, 547 U.S. 489, 497 (2006) (citing 18 U.S.C. § 3161(c)(i)). But "the Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Id.* 18 U.S.C. § 3161(h) permits a district court to grant a continuance and exclude the delay in calculating time under the Speedy Trial Act if the court makes findings on the record that "the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial." *Id.* at 498-99.

6

"The court must make the findings, 'if only in the judge's mind, before granting the continuance.' " *Johnson*, 2021 WL 865341, at *5 (citing *Zedner*, 547 U.S. at 506).

Here, in each order granting Soto's continuances, the court made a finding that the ends of justice served by continuing the trial outweighed the public's and defendant's best interests in a speedy trial, and the court placed on the record its reasons for making each finding.[2] Dockets 30, 32, 35, 38, 41, 43, 55, 60, 107, 116, 124, 134. Thus, each continuance was appropriate under § 3161(h)(7)(A) and the time for each was excluded under the Speedy Trial Act.

Soto argues that he did not consent to all of the continuances and that he was coerced into consenting to several of them. Docket 156 at 2. He argues that those continuances gave the United States a "tactical advantage" that prejudiced him because the United States filed superseding indictments charging more counts and victims during the periods of delay. *Id.* at 2, 4-6. But, as the court determined regarding the same continuances to which Soto now again objects (Docket 99 at 5), the Speedy Trial Act excludes delay "resulting from a continuance granted . . . at the request of the defendant *or his*

---

[2] In its order granting Soto's January 3, 2019, motion to continue, the court did not set forth the reasons for finding that the ends of justice served were outweighed by Soto's and the public's interest. *See* Docket 43 at 1. It did, however, address that continuance in its order denying Soto's motion to dismiss. Docket 99 at 6-7. There, the court stated that the continuance until May 28, 2019 "allowed the parties time to prepare for a complex multi-count trial with multiple alleged victims and significant need for expert testimony," and thus the ends of justice served by the continuance outweighed Soto's interest in a speedy trial. *Id.* at 7.

*counsel* . . . ." 18 U.S.C. § 3161(h)(7)(A) (emphasis added). This means that counsel may move for a continuance without the defendant's consent. *United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012). The court does not now use hindsight to determine whether counsel made a strategic error in moving to continue the case, because the court made a determination that the ends of justice served by giving defense counsel more time to prepare for a complex trial outweighed Soto's interest in a speedy trial. That the United States was also able to use the time to prepare for trial and file superseding indictments does not change the court's calculation.

## II.    CONSTITUTIONAL SPEEDY TRIAL RIGHTS

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. "[T]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002) (citation omitted). Courts consider four factors, established by the Supreme Court in *Barker v. Wingo*, to determine whether a defendant's Sixth Amendment speedy trial rights were violated. 407 U.S. 514, 530 (1972). The court considers: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* These four factors are neither "a necessary [nor] sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533. "Rather, they are related factors and must be considered together with such other circumstances as may

8

be relevant." *Id.* Determining the weight of each factor is a "difficult and sensitive balancing process" that must be "carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Id.*

### A.  The Length of Delay

In considering the length of the delay, a court first considers "(1) whether the length of delay was presumptively prejudicial such that it triggers the *Barker* analysis, and, if triggered, (2) the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Johnson*, 2021 WL 865341, at *7 (quoting *United States v. Rodriguez-Valencia*, 753 F.3d 801, 805 (8th Cir. 2014). In *Johnson*, the court found that a 14-month delay was "presumptively prejudicial." *Id.* Here, the 1,070-day delay—over twice as long as that in *Johnson*—is presumptively prejudicial. Thus, the court addresses whether the delay is greater than necessary to trigger examination of the claim. *Id.*

"[T]he length of delay that will provoke [an inquiry into a constitutional violation of speedy trial rights] is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31. For example, "[t]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531. Here, the charges against Soto are numerous and complex, and they carry severe penalties. He is charged in the original indictment with sexual exploitation of a minor, attempted sexual exploitation of a minor, enticement of a minor using the

internet, attempted enticement of a minor using the internet, receipt of child pornography, and possession of child pornography. Docket 21. Sexual exploitation of a minor and attempted sexual exploitation of a minor carry a minimum sentence of 15 years imprisonment and a maximum of 30 years. 18 U.S.C. §§ 2251(a) and (e). Enticement and attempted enticement of a minor using the internet each carry a mandatory minimum sentence of 10 years' imprisonment and a maximum of life. 18 U.S.C. § 2422(b). Receipt of child pornography carries a minimum sentence of five years' imprisonment and a maximum of 20 years. 18 U.S.C. § 2252A(a)(2)(A). And possession of child pornography carries a maximum sentence of 10 years' imprisonment. 18 U.S.C. § 2252A(a)(5)(B). Each subsequent superseding indictment charges Soto with at least 15 counts of those same crimes relating to numerous different victims. *See* Dockets 49, 53, 68, 152. Soto was charged with many serious charges that could potentially result in decades of imprisonment if he is found guilty.

Further, the charges in each indictment are complex and require forensic analysis. Soto retained a forensic expert to evaluate the evidence and his counsel indicated that the electronic data requiring forensic analysis was voluminous and complex. Docket 74. Given the number, severity, and complexity of the charges in this case, the "delay that can be tolerated" is greater than in a simpler, less serious case. *Barker*, 407 U.S. at 531.

Courts have found that delays longer than the delay here do not necessarily violate a defendant's rights when the other factors indicate that the

delays were necessary and not prejudicial. *See Barker*, 407 U.S. at 533-36 (five-year delay did not constitute constitutional violation); *Rodriguez-Valencia*, 753 F.3d at 805-08 (same for six-and-a-half year delay); *Reynolds v. Leapley*, 52 F.3d 762, 763-64 (8th Cir. 1995) (same for nine-year delay). Given the severity and complexity of the charges, and the balance of the remaining *Barker* factors below, the court determines that here, too, Soto's right to a speedy trial was not violated.

### B.    Reasons for the Delay

"Closely related to the length of delay is the reason the government assigns to justify the delay." *Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* "A more neutral reason . . . should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.*

The court must determine whether the government or the defendant was "more to blame" for the delay. *Rodriguez-Valencia*, 753 F.3d at 806 (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992)). Courts look to whether there is "bad faith or dilatory purpose on the Government's part . . . ." *United States v. Sims*, 847 F.3d 630, 635 (8th Cir. 2017) (quoting *United States v. Loud Hawk*, 474 U.S. 302, 316 (1986)).

Here, the reasons for delay can be divided into three different categories: continuances filed to allow time for investigation, forensic analysis, and plea negotiations; continuances filed to allow newly appointed counsel time to prepare for trial; and continuances filed in the interest of public health during the COVID-19 pandemic.

1.   Continuances to allow investigation, forensic analysis, and plea negotiations

Soto's trial was initially set for July 3, 2018. Docket 10. It appears that during the time from his initial appearance until November of 2018, a period of about 7 months, the parties were seeking to resolve the case via plea agreement. On June 6, 2018, July 6, 2018, and August 31, 2018, Soto, through Albertson, filed motions for 30 and 60-day continuances, stating that the parties were actively involved in plea negotiations and that defense counsel was investigating discovery. Dockets 28, 31, 34. These continuances, together, pushed the trial date to November 20, 2018. Docket 35. This delay is neither abnormal for a complex case that carries weighty penalties, nor does it suggest bad faith on the part of the United States or that the United States was "more to blame" than Soto. *Rodriguez-Valencia*, 753 F.3d at 806 (quoting *Doggett*, 505 U.S. at 651).[3]

On November 2, 2018, Soto filed a fourth motion to continue, requesting 30 additional days and stating that Soto had not received proposed plea

---

[3] Even if, as Soto claims, his original counsel was deceiving him about the true nature of the continuances, the blame does not shift to the United States, and dismissal under the Speedy Trial Clause is not the proper remedy for the alleged deception.

documents from the government. Docket 36 at 1. Soto filed a fifth motion to continue the trial by 30 days on November 21, 2018, stating that additional time was needed to review plea documents with Soto. Docket 39 at 1. The court granted each continuance and the trial date was moved to January 15, 2019. Dockets 38, 41. Soto alleges that the United States intentionally withheld plea documents during that period and acted in bad faith to prejudice him. Docket 156 at 3-4. Soto does not allege additional facts to support his claim that the period of delay between November 20, 2018, and January 15, 2019, resulted from the United States's bad faith. Even if the United States withheld the plea agreement in bad faith—an unsupported claim—that only counts for, at most, 30 days' delay. Docket 36. And Soto always had the option of an open plea where he would plead guilty to all the charges without a plea agreement, which he did not do.

Albertson filed a sixth motion to continue on January 3, 2019, this time stating that Soto had decided to proceed to trial and that through informal discussions with the court, a trial date had been set for May 28, 2019. Docket 42 at 1. The court granted the continuance and set a jury trial in the case for May 28, 2019. Docket 43. That period of delay, around 5 months, resulted from Soto's decision not to plead guilty and insistence on going to trial. A five-month delay for counsel to prepare for a complex, 6-count trial, after initially proceeding with plea negotiations, is not unreasonable and does not suggest bad faith on the part of the United States.

13

On January 11, 2019, Soto retained Ellery Grey as counsel, and Albertson withdrew as his counsel. Dockets 46, 47, 48. On February 20, 2019, the United States filed a Superseding Indictment that charged Soto with 18 counts of the same crimes in the indictment. Docket 49. On April 16, 2019, Soto filed a seventh motion to continue the trial by 60 days, stating that Grey needed additional time to review discovery and prepare for trial. Docket 52 at 1. The trial was moved to July 23, 2019 following that continuance motion, a two-month delay from the May 28, 2019 trial date. Docket 55.

The United States filed a Second Superseding Indictment on April 16, 2019, charging Soto with 21 counts of the same crimes alleged in the Superseding Indictment. Docket 53. Soto moved to continue for the eighth time on May 10, 2019, requesting the trial be moved from July 23, 2019, to a time between December 2 and 10, 2019, to allow Grey additional time to review discovery and prepare for trial. Docket 57 at 1. A trial date was set for December 2, 2019. Docket 60. A delay of nearly 11 months resulted from those continuances—a substantial amount of time that deserves scrutiny under *Barker*. Given that Grey was new to Soto's case, and that the United States filed a superseding indictment charging fifteen additional counts and alleging at least five additional victims, the long delay was reasonable to give Grey time to prepare a defense. *See* Dockets 21, 49, 53. This delay does not suggest that the United States acted in bad faith. It does not even suggest negligence or a "neutral reason" under *Barker*. Rather, the reason was Soto's own counsel's need to prepare a defense and adequately represent Soto.

14

On October 22, 2019, the United States filed a Third Superseding Indictment that charged Soto with fifteen counts of the same crimes charged in the original and Second Superseding Indictments, adding one victim and removing several others. Docket 68. Soto, through Grey, filed a ninth motion to continue on November 8, 2019. Docket 74. The United States opposed the motion, and the court denied it. Dockets 78, 79. This shows that, rather than attempting to delay the trial, the United States wanted to go to trial sooner rather than later, cutting against an argument that the United States acted in bad faith to delay Soto's trial. Further, in a pro se motion to fire Grey and appoint new counsel, Soto asks for reconsideration of the order denying the November 8, 2019 continuance motion. Docket 94 at 2-3. He alleges the additional time is required because the "Prosecutor[s] [did] not exercis[e] their due diligence." *Id.* at 3. But Soto fails to provide any facts claiming prosecutors did not perform due diligence, aside from his complaints that the United States filed a superseding indictment charging him with more counts than the original indictment. Soto actively sought additional time for forensic analysis, which does not support his claim that delays were a result of the United States's bad faith. The period of delay that resulted from Soto's counsels' need to negotiate a plea and prepare for trial—the time from May 2018 to November 2019—was an extraordinary period of time. But when examined individually, each delay was reasonable to ensure Soto received a fair trial and at most, one month of that delay was a result of the United States's actions, whether negligence or bad faith.

2.    Delay due to Soto's Firing Retained Counsel

On November 21, 2019, Soto moved for a new attorney in place of Grey, citing a "breakdown in communications" and a slough of motions that Grey would not file on his behalf because Grey did not believe they had merit. Docket 94. These motions included a motion to reconsider the court's denial of the November 9, 2019, motion to continue; a motion for an evidentiary hearing where his parents could testify that his original attorney, Albertson, attempted to coerce him; a complaint that the United States disobeyed the court's order and may have tampered with evidence; a claim that the lead Assistant United States Attorney, Sarah Collins, contacted Albertson improperly; and a claim of vindictive prosecution. Docket 94 at 2-4. The court granted the motion and appointed Andrews as Soto's third attorney. Dockets 97, 102. Andrews moved for a 90-day continuance of the trial—which was at the time scheduled for two weeks after his appointment—to allow him time to prepare. Docket 104. The court granted that continuance and set a trial date of March 3, 2020. Docket 107. Soto then moved for a trial date certain and the court set the trial for June 8, 2020. Docket 115. A delay of seven months occurred after Soto fired Grey and Andrews was appointed. This delay is reasonable in light of the complexity and seriousness of the charges and Andrews's need to prepare adequately for trial.

3.    COVID-19-Related Delays

On March 6, 2020, the case was reassigned to this court. Docket 118. On April 8, 2020, the Chief Judge of the District of South Dakota amended

16

Standing Order 20-03 to continue all jury trials that were scheduled to commence before July 6, 2020 because of COVID-19. First Amended Standing Order 20-03 (D.S.D. Apr. 8, 2020). Soto, through Andrews, moved to continue the trial scheduled for June 8, 2020 on the grounds that it was included in the time period covered in the standing order. Docket 122 at 1. After a status conference between the parties on June 1, 2020, this court granted the motion for continuance and set a trial date of October 26, 2020. Dockets 123, 124.

On October 16, 2020, Soto, through Andrews, filed a motion to continue the trial because of cases continuing "to rise at an alarming rate throughout the District of South Dakota and in Pennington County in particular." Docket 132 at 1. There were 797 new cases reported in South Dakota on October 15th, including 86 cases in Pennington County. *Id.* at 1 n.1. South Dakota was one of several midwestern states with some of the highest incidences of COVID-19 cases in the nation at that time. According to Andrews, Soto was held in a cell block where at least one visibly sick inmate had been held, and Soto was potentially exposed to that inmate. *Id.* at 1-2. Andrews asserted that he would be required to meet with Soto in a small room, risking his exposure. *Id.* The court granted the continuance and set a trial date of April 12, 2021, after a conference with the parties. Dockets 141, 144.

This court intended to proceed with the trial on October 26, 2020, after the standing order continuing trials had expired, in an effort to resolve the case. But the court credited Andrews's concerns regarding exposure to COVID-19. On October 26, 2020, Pennington County's 7-day new case average was 74

17

cases per day. *Tracking Coronavirus in Pennington County, S.D.*, N.Y. Times, https://www.nytimes.com/interactive/2021/us/pennington-south-dakota-covid cases.html?action=click&module=covid_tracking&pgtype=Interactive&region=TableRowLink (last visited Mar. 25, 2021). Pennington County reached its peak of new cases per day level less than a month later, on November 18, 2020. *Id.* The Pennington County Jail, specifically, was in the middle of a COVID-19 surge at the time that Soto was scheduled to proceed to trial, and in early October, the jail had nearly 30 active cases among its inmates.

*Pennington County Jail overcomes Covid-19 surge using quarantine units*, NewsCenter1, https://www.newscenter1.tv/pennington-county-jail-overcomes-covid-19-surge-using-quarantine-units/ (last visited Mar. 25, 2021). The Centers for Disease Control and Prevention advise remaining six feet apart from others to avoid the spread of COVID-19, and Andrews and Soto would have needed to be nearer to one another than 6 feet for extended periods during and before trial. The court held a status conference and set the trial, based on the parties' and witnesses' availability, not the court's, for April 12, 2021. Docket 144. The trial is set to proceed on that date. The period of delay between June 2020 and April 2021 is appropriate in light of the dangers of the COVID-19 pandemic, the District of South Dakota's rules concerning trials during the pandemic, and the need to protect the health and safety of all parties. It does not reflect any bad faith or negligence on the part of the United States. Thus, each period of delay was justified by the need to prepare for trial, substituted counsel, or the COVID-19 pandemic.

18

### C.    Soto's Responsibility to Assert his Right

Third, the court considers the defendant's responsibility to assert his right to a speedy trial. "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether [he] is being deprived of the right." *Barker*, 407 U.S. at 531-32. The Supreme Court "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* This factor of the test serves to ensure that a defendant meets some responsibility to assert his right to a speedy trial. But courts in the Eighth Circuit have not held that a defendant's assertion of his speedy trial right strengthens his case, only that a failure to assert it may weaken his case. *See*, *e.g.*, *United States v. Weber*, 479 F.2d 331, 333 (8th Cir. 1973).

Here, Soto asserted his speedy trial rights via a motion to dismiss filed on November 8, 2019, and again in the motion the court now addresses. Dockets 76, 156. Soto clearly asserted his speedy trial rights in this case. The court addresses his argument that the rights have been violated on the merits and does so only because he unequivocally asserted his right to a speedy trial. Thus, while Soto's assertion of his right may be necessary for the court to address the claim, it does not independently support the merits of that claim.

### D.    Prejudice to Soto

Finally, the court addresses prejudice to Soto from the delay. *Barker*, 407 U.S. at 532. The court considers the need to prevent oppressive pretrial incarceration, need to minimize anxiety and concern of the accused, and the

need to limit the defense's impairment due to delay. *Id.* Whether the defense is impaired is the most important consideration in determining prejudice to the defendant. *Id.*

Here, Soto has been in custody for nearly three years. The court does not minimize the "societal disadvantages of lengthy pretrial incarceration." *Id.* at 532. Because Soto's case was not resolved in the first two years it was pending, Soto was forced to remain in the Pennington County Jail during its COVID-19 outbreak in 2020. "The time spent in jail is simply dead time" and the court does not attempt to argue otherwise in Soto's case. *Id.* at 532-33. The court also does not diminish that Soto has been living under a cloud of suspicion since his arrest in 2018.

The issue of whether Soto's defense is impaired—the most important factor in determining prejudice—suggests Soto did not suffer great prejudice from the delay. Soto does not argue that witnesses are unavailable or that they will have forgotten portions of the events charged. In fact, if anything, the delay has allowed Soto's forensic expert additional time to review the forensic discovery in this case and prepare Soto's defense. Soto himself requested additional time for his forensic expert to review the evidence when he requested new counsel. He does not point to any practical reason that his defense is impaired.[4]

_____

[4] Construed broadly, Soto's only argument that his defense is impaired rests on the fact that the United States brought superseding indictments charging additional counts and victims after the original continuances in this case were granted. *See* Docket 156 at 6-7. Soto points to no evidence suggesting that the

## CONCLUSION

The 1,070-day since Soto's arrest is significant, but it does not constitute a violation of the Speedy Trial Act, because the court found that the ends of justice served by each period of delay outweighed the public and defendant in a speedy trial. No period of delay resulted from any court's crowded docket.

The delay does, however, presumptively trigger analysis under the Supreme Court's factors in *Barker* as to whether his constitutional right to a speedy trial was violated. But the reasons for delay—plea negotiations, trial preparation, substitution of counsel, and the COVID-19 pandemic—are legitimate and do not involve the United States's bad faith. Further, Soto is not greatly prejudiced by the delays. Thus, it is

ORDERED that Soto's motion to dismiss (Docket 156) is denied. The scheduled trial will proceed on April 12, 2021.

Dated March 29, 2021.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

---

superseding indictments were nefarious or vindictive. Rather, they appear to be the product of the United States supplementing charges once it received additional evidence in this case. That the United States was also able to prepare its case while Soto was preparing his defense does not unduly impair Soto's defense.

21